OLAVARRIA & CO., INC. *v.* UNITED STATES (No. 4610)[1]

United States Court of Customs and Patent Appeals, June 28, 1949

*William Whynman* for appellant.

*David· N. Edelstein,* Assistant Attorney General (*Joseph F. Donohue,* special attorney, of counsel), for the United States.

[Oral argument April 5, 1949, by Mr. Whynman and Mr. Donohue]

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL, and JOHNSON, Associate Judges

GARRETT, Chief Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Third Division, entered in conformity with its decision, C. D. 1107, rendered May 14, 1948, overruling three protests of the importer, which were consolidated for trial and decided in a single opinion, because all three related to the same subject matter; viz., refined

[1] C. A. D. 409.

1

sugar imported from Cuba and placed in a bonded warehouse, under the prescribed warehouse entry forms, at the port of Mobile, Alabama.

The brief filed before us on behalf of the Government contains a condensed paraphrase of the material findings of the trial court, which we here quote (omitting the references to the record pages):

Paragraph 501 of the Tariff Act of 1930 assesses a duty of 1.7125 cents per pound on sugar testing by polariscope above 50 sugar degrees and not above 75 sugar degrees and an additional duty of three hundred and seventy-five ten-thousandths of 1 cent per pound for each additional sugar degree. Sugar of Cuban origin is entitled to a preferential reduction of 20 per centum of the existing rate by virtue of the Treaty of Commercial Reciprocity between the United States and Cuba (33 Stat. 3; Tariff Act of 1930, Sec. 316).

By Presidential Proclamation (T. D. 47040) issued under authority of Section 336, Tariff Act of 1930 (19 U. S. C. 1336), and effective June 8, 1934, the rates of duty provided in paragraph 501 were reduced from 1.7125 cents per pound to 1.284375 cents per pound. A further reduction in the existing duty on sugar was effected by a trade agreement between the United States and the Republic of Cuba (T. D. 47232) on September 3, 1934. The reduced rate provided by this last mentioned trade agreement was suspended by public notice given by the Secretary of Agriculture pursuant to a Presidential Proclamation, issued in accordance with the provisions of the Sugar Act of 1937 (50 Stat. 903) and the provisions of the trade agreement. This suspension became effective by executive order on September 12, 1939, at 12:54 P. M., Eastern Standard Time (11.54 P. M. Mobile Time), (T. D. 49962 and 49977). The result of the suspension of these lower rates was to restore the rate which had become operative through the Presidential Proclamation published on June 8, 1934, in T. D. 47040.

In the case at bar the Collector at Mobile assessed duty on the merchandise at the rates applicable under T. D. 47040. The importer claimed that it was entitled to the lower rate in T. D. 47232. The import is chargeable with duty at the rate in effect at the time of withdrawal. The dispute here centers around the interpretation to be given to certain acts of the importer, or his agents, which resulted in a controversy as to the time when the importer completed its withdrawal of the merchandise.

Appellant herein, a sugar importer, imported and placed in bonded warehouse in Mobile, Ala., on July 31, 1939, 30,000 bags of refined Cuban sugar. Between the date of entry and September 11, 1939, 10,000 bags were withdrawn and are not involved in this suit. The remaining 20,000 bags were in bonded warehouse on September 12, 1939, at the opening of business and no steps had then been taken to effect their withdrawal * * *.

On that day, at 10 o'clock in the morning, a messenger named Kraus, employed by Page & Jones, Customhouse brokers with authority to represent appellant, went to the Custom House with the necessary papers and funds to withdraw the balance of the sugar. The money was in the form of a cashier's check to the order of the Collector of Customs for $29,780 * * *. The messenger presented the papers and check to Alfred P. Holmes, who was at the time Entry Clerk in the Collector's Office at Mobile * * *. Mr. Holmes, having just received a telegram from the Bureau of Customs, advised the messenger from Page and Jones that the telegram indicated the duty on sugar was to be reduced.

The fact was that the Bureau of Customs had sent a telegram stating that the low rate of duty provided by T. D. 47232 (Trade Agreement with Cuba) would not be effective after 11 P. M. on September 11, 1939, thus restoring the duty provided by Presidential Proclamation (T. D. 47040). It added that Cuban sugar was entitled to a 20% preference in the computation of duty. The telegram was

ambiguously worded, and caused confusion both in Mobile and elsewhere. As a result of the confusion in Mobile, Holmes told Kraus that he thought the duty on sugar had been reduced. As a result of the confusion caused elsewhere by the ambiguity, the Bureau published a second telegram stating that its earlier communication was revoked, and that sugar imported or withdrawn from warehouse should be dutiable at the rates provided in T. D. 47040 effective 12:54 P. M.; Eastern Standard Time, September 12, 1939. Thus, at the time of the conversation between Kraus and Holmes, and until 12:54 P. M. that day, sugar could still be lawfully withdrawn from warehouse at the lower rates of duty in T. D. 47232.

The entry tendered by the messenger contained a computation of duty based on this lower rate * * *. The witness Holmes was examined in considerable detail by importer's counsel who sought to establish that he had instructed the messenger from Page & Jones to take back the check and return with a check for a lower amount * * *. This does not appear to be the case. The sense of the testimony seems to be that Holmes, having examined the entry and having reached the conclusion that it contained a calculation for a greater amount of duty than that which was properly chargeable, advised the messenger to that effect and the messenger returned with the check for the purpose of obtaining one in a lesser amount. Holmes did not refuse the entry; Kraus did not press its acceptance.

Jones, of the brokerage firm, communicated with Holmes by telephone and from their conversation came to the conclusion that the proper amount of duty on the remaining sugar was $25,964. He prepared a check for this amount, brought it to the Custom House and presented it at the collector's office * * *. The check was accompanied by a new set of withdrawal papers. Subsequently, and about 11 o'clock in the morning, Jones asked the collector to cancel this second withdrawal * * *. He said that he never received the check again, and he did not know whether or not it was ever cashed * * *.

Walter H. Dodd, Assistant Collector of Customs at Mobile at the time relevant to the present controversy, called as a witness by appellant, substantiated the testimony of Mr. Holmes. He said that the reports and records of his office indicated that someone from Page & Jones' office brought an entry and withdrawal for a certain amount of sugar. There was some friendly conversation between the entry clerk and the Page & Jones representative over the rate of duty. The entry was withdrawn and a new entry was presented for a lesser amount on the same day. Then, Mr. Frank Jones of the brokerage firm came to the collector's office and stated that he desired to withdraw this second entry. Mr. Dodd first said that the second entry could not be withdrawn because it had been filed and accepted. Then, Mr. Draugham of the Merchants Bank came to the collector's office and explained that his bank, also acting in behalf of the importer, desired to have this second entry withdrawn. Mr. Dodd investigated further and ascertained that while the entry had been left with the entry clerk, it had not as yet been recorded, nor had any entry been made by the cashier of the check which accompanied it. Thereupon Mr. Dodd stated that it would be in order to grant the request which had been made by Page & Jones. The papers and the check were returned and never appeared on the books of the collector. * * *

In its opinion the Customs Court first reviewed the facts in substantially the same manner as set forth herein * * *. Then it turned to the question of whether plaintiff herein had sustained the burden of proof. Three protests had been filed covering the 20,000 bags of sugar in question. The first (Protest 14272-K, * * *) alleged that a withdrawal entry was filed with the collector before 12:54 P. M. on September 12, 1939, together with legal tender for all charges thereon and that such withdrawal entry was refused by the collector to the

4

detriment of plaintiff. Alternatively, it was alleged that any increase in the rate beyond that in effect on September 11, 1939, was unlawful. The second protest (Protest 18643–K, * * *) alleges "that the law levying the tax on sugar was unlawful, illegal, void and unconstitutional * * *". Neither the law nor the basis of the alleged illegality is further described. The third protest (Protest 25765–K, * * *) alleges that the rate of duty assessed on the merchandise was not lawful, that the compensation tax was illegal, and that the merchandise was dutiable at the rate provided in the Cuban Trade Agreement in effect on September 11, 1939, before 11 P. M.

Apparently the contentions as to the constitutionality or illegality of the law imposing the duty were not seriously urged because the court confined itself to a consideration of whether the withdrawal entry was unlawfully refused by the collector, as alleged. It found that the testimony, while conflicting, nevertheless established that both entries were voluntarily withdrawn by the importer's agent after they had been presented to the collector but before they had been actually entered in the collector's records. It found that this action did not constitute a refusal on the part of the collector to accept the entries. It held further that the collector was not barred from complying with the request of the importer under the circumstances in this case * * *.

Upon the facts shown in the record so recited, it is our opinion that no basis is presented for a reversal of the judgment of the trial court, and we discern no reason for entering upon an extensive discussion of the case.

At the time the messenger (Kraus), sent by appellant's authorized brokers, arrived at Customs with a check for $29,780, and presented it and the other papers necessary for the withdrawal of the sugar from warehouse that apparently was the correct amount of duty then due, but unhappily an ambiguous telegram had been sent to Collectors of Customs which indicated that a reduction in duty was at hand. There is no reason to doubt that Holmes informed the messenger of this telegram, and it is not at all strange that the messenger instead of filing the papers and delivering the check took them back to the brokers by whom he was employed. Neither is it strange that the brokerage firm then called Holmes, or someone else in the customs service, and made inquiry about the matter.

Following the inquiry, new withdrawal entries were prepared and these with a certified check for $25,964, were presented at the office of the collector. There is some confusion in the testimony as to the exact time when the second set of papers and the check were presented, but we are assuming that the presentation took place prior to 11:54 a. m., Central Standard Time.

We further assume that the collector, or persons legally acting for him, regarded the amount of the check as the correct amount of the duty collectable under the construction placed upon the "ambiguous" telegram. Had appellant done nothing further, the sugar undoubtedly would have been released to it, and if there had been an effort later on the part of the Government to assess and collect additional duties, an interesting question might have arisen. It is easily dis-

cernible that appellant plausibly might have contended that it had some equities.

But what appellant did was to withdraw the entries and secure a return of the check before any record whatever was made of them in the collector's office.

As we view the case, the collector violated no law in directing their return. It is somewhat odd that an importer should ask that an action taken at its own request should be held illegal.

The decision of the trial court in this case covers every question of fact and law, and we find no reason whatever to disagree with it.

The judgment of the United States Customs Court is *affirmed.*

HATFIELD, Judge, was present at the argument of this case, but, by reason of illness, did not participate in the decision.